***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between plaintiff and defendant on 17 January 2000, the date of the alleged injury.
3. Defendant is self-insured.
4. Plaintiff's average weekly wage on 17 January 2000, was $874.04.
5. Plaintiff received short-term disability benefits, from 17 January 2000, through 21 August 2000, in the amount of $8,100.00, with no contribution from plaintiff.
6. The issues for determination are whether plaintiff sustained an injury by accident on 17 January 2000, and if so, what are the compensable consequences.
7. The Pre-Trial Agreement and its attached documents were marked and stipulated as Stipulated Notebook No. 1.
 ***********
Based on the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACTS
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 41 years old. He began working for defendant as a wrecker service driver approximately 17 years prior.
2. During the days or weeks prior to 17 January 2000, plaintiff complained of back pain to multiple employees of defendant, including Bryan Berry, Ava Newsome and Lee Davis. Bryan Berry testified that plaintiff complained of back pain during the week prior to 17 January 2000, and that he attributed his back pain to accidents he had sustained while driving a four-wheeled all-terrain vehicle. Ava Newsome, defendant's office manager, testified that on several occasions two to three weeks prior to 17 January 2000, plaintiff spoke to her regarding his back pain and stated that he had been to a chiropractor for treatment. Lee Davis, defendant's warranty administrator, testified that plaintiff told her on several occasions prior to 17 January 2000 that he was seeing a chiropractor for his back pain. Ms. Davis also testified that in February 2000, plaintiff passed her in the hall at work and told her, "You are not going to find any records that I was ever seen by a chiropractor before January 17, 2000."
3. Plaintiff completed a Department of Transportation physical on 11 January 2000. He did not report any complaints of any nature.
4. On 17 January 2000, plaintiff, along with other employees of defendant, including Jason Jump, Danny Bryant and Mike Aycock, were attempting to push a disabled one-ton pick-up truck into a service bay. There was a half-inch hump located between the service bay and the parking area where the disabled truck had previously been placed. Jason Jump was using an electric "pusher" device to aid in pushing the truck into the service area. However, due to the presence of the hump, the employees were experiencing difficulty in getting the truck into the service bay.
5. Jason Jump was operating the pusher. Mike Aycock was in the driver's seat steering the disabled truck. Danny Bryant was on the driver's side pushing the truck. Plaintiff was at the front of the truck, pulling on the front fender. The front tires of the truck were already in the service bay before plaintiff and Bryant began assisting Jason Jump.
6. The employees' first attempt to push the truck into the service bay was not successful. On the second attempt, Danny Bryant heard plaintiff yell and immediately instructed Jason Jump to stop the pusher. Jason Jump was able to stop the truck before its rear wheels ever got over the hump, after which plaintiff testified that Bryant slid him out of the way of the truck.
7. Plaintiff testified that the truck's left front tire hit his foot, knocked him down and "came up to my left knee while I was on the floor." In response to further questioning, plaintiff testified that the truck rolled on his leg. Plaintiff is not claiming compensation for an injury to his left leg as a direct result of the truck incident. Bryant did not see the truck roll up and down plaintiff's foot and leg in the manner plaintiff alleges.
8. Mike Aycock stated that he saw plaintiff in front of the truck when they began trying to get it into the stall. As the truck was rocked forward, plaintiff went out of sight in front of the truck. Defendant does not dispute that plaintiff landed on the floor. Mr. Aycock did not hear anyone holler and had no knowledge of what occurred until after the truck was put entirely in the bay. Further, Mr. Aycock had no recollection of helping plaintiff to his feet after the incident. He was able to feel the truck's rear wheels go over the hump in the back; however, at no time did Mr. Aycock feel the front tires of the truck go over any other obstruction. Plaintiff initially told Mr. Aycock that the truck actually rolled over his foot first, and then rolled up his leg. On at least six occasions after the alleged incident, plaintiff contacted Mike Aycock in an effort to coach his recollection of the incident.
9. Following the incident, plaintiff reported it to Bryan Berry. When Berry asked plaintiff if he needed to see a doctor, plaintiff said "No." Berry further testified that after more than a week following the incident, plaintiff called him and asked Berry to "help him out." When Berry asked how, plaintiff responded, "I need to try to get this thing covered under workmen's comp." Berry refused, stating to plaintiff that he had not been hurt on the job. Berry testified that plaintiff stated, "I know, but I need some help."
10. On 19 January 2000, plaintiff presented to chiropractor Mark A. Thurston. Plaintiff reported that he had awakened a few days earlier with hip soreness which had progressed into severe left low back pain and hip pain with numbness in his left thigh. Although plaintiff reported that he drove a wrecker truck for defendant, he did not report that he had sustained a work-related injury. On 21 January and on 24 January 2000, plaintiff reported an increase in pain to D.C. Thurston.
11. Due to the continued severity of plaintiff's symptoms, D.C. Thurston referred plaintiff to Dr. Michael Bowen, a family practitioner with Wilson Immediate Care. Plaintiff presented to Dr. Bowen on 24 January 2000, complaining of "some back pain." Plaintiff reported to Dr. Bowen's nurse that he had sustained "no specific injury or trauma." An MRI scan performed on 24 January 2000 revealed a left L4-L5 focal disk herniation and multilevel, mild degenerative intervertebral disk space change. Dr. Bowen noted that plaintiff's condition could have occurred without trauma and could have been asymptomatic for a period of time; therefore, he could not attribute it to a specific event, especially given that plaintiff did not report any trauma relating to the onset of pain. After reviewing the MRI, Dr. Bowen referred plaintiff to neurosurgeon Dr. Ira Hardy for further treatment.
12. Plaintiff was examined by Dr. Hardy on 24 January 2000. Dr. Hardy's office note states that "a complete history is taken from the patient;" however, there is no mention of a work-related incident. Rather, plaintiff reported to Dr. Hardy only that his back discomfort began "a little over a week ago."
13. On 12 February 2000, plaintiff filed a claim for short-term disability benefits. The application form contains a section for plaintiff to complete, one for defendant to complete, and one for Dr. Hardy to complete. The portion completed by Dr. Hardy on 8 February 2000, indicates that plaintiff's condition was not due to plaintiff's employment. The employer section of the application indicates that plaintiff's disability did not arise out of his employment and, most significantly, the section signed by plaintiff indicates that the accident or illness was not related to plaintiff's employment. Although plaintiff testified at the hearing before the Deputy Commissioner that defendant completed the employer and employee sections of the form with no previous input from plaintiff and that plaintiff was somehow coerced into signing the form, this testimony is not accepted as credible.
14. Ultimately, Dr. Hardy performed two back surgeries on plaintiff. On 3 February 2000, Dr. Hardy performed a left partial laminectomy at L4-L5 with excision of a protruded disk. The second surgery was performed on 22 February 2000, and consisted of a left lateral partial facetectomy and foraminotomy with excision of an extruded disk at L2-L3. Following these surgeries, plaintiff developed left leg deep vein thrombosis, a blood clot in his thigh, for which he was treated by vascular surgeon Dr. Barry R. Hastings beginning on 5 May 2000. During that visit, plaintiff denied any history of trauma to his left leg. Dr. Hastings opined that plaintiff's condition could be causally related to his inactivity following the surgeries on his back.
15. Plaintiff continued to treat with Dr. Hardy following his surgeries. At a follow-up examination on 30 August 2000, plaintiff related his condition to the work-related incident of 17 January 2000 for the first time.
16. Based upon the greater weight of the evidence, the Full Commission finds that plaintiff complained of back pain to various employees of defendant prior to 17 January 2000, and he also received chiropractic treatment for back pain prior to 17 January 2000. Plaintiff's contention that his back pain began following or was attributable to the 17 January 2000 incident is not supported by the greater weight of the evidence.
17. Plaintiff has failed to prove by the greater weight of the evidence that his back surgeries, deep vein thrombosis and resulting disability are causally related to his 17 January 2000 incident at work.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff has failed to satisfy his burden of proving that he sustained an injury resulting from his accident of 17 January 2000 which arose out of and in the course of his employment. Although plaintiff may have been involved in assisting other employees in getting a disabled one-ton pick-up truck into the service bay on that date, there is insufficient evidence that he sustained any injury as a result of that activity, or that plaintiff's back condition was causally related to the incident. Accordingly, plaintiff is not eligible for compensation under the Act. N.C. Gen. Stat. § 97-2.
2. Plaintiff has further failed to satisfy his burden of proving that the 17 January 2000 incident resulted in his need for medical treatment. N.C. Gen. Stat. § 97-25.
 ***********
Based upon the foregoing Findings of Facts and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits is hereby DENIED.
2. Each side shall bear its own costs.
This the ___ day of October, 2002.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_____________ THOMAS J. BOLCH COMMISSIONER